# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

May 17, 2019

To:
Shig Yasunaga
UNITED STATES DISTRICT COURT
Central District of Illinois
United States Courthouse & Federal Building
Springfield , IL 62701-0000

| No. 17-2936 | LUIS M. DIAZ GUILLEN, Plaintiff - Appellant<br><br>v.<br><br>THOMAS BAKER, MD, et al., Defendants - Appellees |
|---|---|
| **Originating Case Information:** ||
| District Court No: 3:15-cv-03087-CSB<br>Central District of Illinois<br>District Judge Colin S. Bruce ||

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

| AMOUNT OF BILL OF COSTS (do not include the $): | 117.30 |
|---|---|
| | |
| DATE OF MANDATE OR AGENCY CLOSING LETTER ISSUANCE: | 05/17/2019 |

RECORD ON APPEAL STATUS:   No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

------------------------------------

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**   **Received by:**

May 17, 2019   s/D. Sjoken

form name: **c7_Mandate**(form ID: **135**)

**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 22, 2019[*]
Decided April 23, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 17-2936 | |
| LUIS M. DIAZ GUILLEN,<br>*Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 15-3087 |
| THOMAS A. BAKER and<br>RHONDA MILLS,<br>*Defendants-Appellees*. | Colin S. Bruce,<br>*Judge*. |

## O R D E R

Luis Diaz Guillen, an Illinois inmate, had his left upper jaw surgically removed after being diagnosed with squamous cell carcinoma, a form of cancer. Apparently believing that this was a misdiagnosis, he sued a doctor and nurse practitioner for ignoring—in violation of the Eighth Amendment—a condition that he regards as sinus problems. See 42 U.S.C. § 1983. The district court entered summary judgment for the

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

defendants, concluding that the undisputed facts showed that he had received constitutionally adequate treatment. We affirm.

We recount the facts in the light most favorable to Diaz Guillen, the opponent of summary judgment. See *Giles v. Tobeck*, 895 F.3d 510, 512 (7th Cir. 2018). In late 2012, Diaz Guillen, housed at the Western Illinois Correctional Center, complained of sinus problems. These complaints came on the heels of a procedure he underwent two months earlier to have a hemangioma (a benign growth) in his mouth surgically removed. To treat what she thought was sinusitis, Nurse Practitioner Rhonda Mills prescribed antibiotics and a nasal spray. When Diaz Guillen continued to complain about his sinuses, Mills added Tylenol and saltwater rinses to his regimen and scheduled a follow-up appointment in two weeks. Diaz Guillen's sinus issues persisted, however, so Mills referred him to Dr. Thomas Baker, the facility's medical director. Dr. Baker examined Diaz Guillen three days later, noted evidence of post-nasal drainage, and surmised that Diaz Guillen had not taken all his prescribed medications (which a nurse recently had found in the trash). Dr. Baker then prescribed ibuprofen and Benadryl and ordered a nurse to watch Diaz Guillen take his medicine. At a follow-up appointment two months later, Diaz Guillen reported that his sinuses were not bothering him, but the doctor—noting tenderness in Diaz Guillen's left cheek—ordered x-rays of his facial bones and sinuses; these x-rays revealed no abnormalities.

In May 2013, the prison's dentist reported to Dr. Baker that Diaz Guillen had sharp pain on the left side of his face. Dr. Baker examined Diaz Guillen, noted tenderness in his left cheek and possible left sinusitis but otherwise no obvious abnormalities, and he prescribed an antibiotic and a nasal spray.

In July, Nurse Mills detected an oral lesion with discharge in Diaz Guillen's mouth. She confirmed with the prison's dentist and Dr. Baker that Diaz Guillen had an upcoming examination. The following month, the prison's dentist observed a purplish vascular lesion around one of Diaz Guillen's teeth and referred Diaz Guillen to an oral surgeon. At a collegial review that month led by Dr. Baker, the oral surgeon opined, based on his exam of Diaz Guillen, that he believed that the lesion could be cancerous. The team then referred Diaz Guillen to an ear, nose, and throat (ENT) specialist.

Over the next four months, the ENT doctor treated Diaz Guillen under Dr. Baker's supervision. At the ENT doctor's request, Dr. Baker ordered a CT scan of Diaz Guillen's sinuses and a biopsy of Diaz Guillen's lesion. The biopsy confirmed that the lesion was cancerous, and so Dr. Baker facilitated follow-up appointments ordered by the ENT specialist to prepare Diaz Guillen for surgical resection. After consulting with

the surgeon, Dr. Baker ordered various scans and an appointment with a prosthodontist to fit Diaz Guillen for a prosthesis that he would need in order to eat after the surgery.

In January 2014, Diaz Guillen underwent a left total maxillectomy, a surgical removal of the left upper jaw.

Upon Diaz Guillen's return to the prison, Dr. Baker placed him in the infirmary, prescribed Vicodin for pain as well as a diet of pureed foods, and facilitated Diaz Guillen's follow-up appointments with his outside doctors. Diaz Guillen, however, became increasingly difficult to treat (for example, he ripped out and discarded his prosthesis, which the prison replaced; exclaimed that the medical staff was trying to kill him; refused to eat or take his medicine; and, more than once, attempted to cut himself with a piece of metal). The prison placed him on suicide watch. Diaz Guillen later underwent post-operative chemotherapy and radiation treatments that were believed to be successful.

Diaz Guillen sued Dr. Baker and Mills for deliberate indifference to his serious medical needs, which he characterized as a sinus infection that had been misdiagnosed and mistreated as cancer.

The district court entered summary judgment for Dr. Baker and Nurse Mills, determining that the record did not reflect that either of them had delayed treatment, failed to follow any appropriate protocol, or refused to follow recommendations made by an outside medical specialist. To the extent Diaz Guillen believed that the defendants misdiagnosed him, the court explained that the cancer diagnosis was made by the ENT specialist, not Dr. Baker. The court added that in the time leading up to the referral to the ENT doctor, and then after the referral, the record reflected that defendants exercised appropriate professional judgment—in their responses to his complaints about medication, in scheduling follow-up appointments, in taking steps when medication did not resolve the issues, and in facilitating all treatment recommendations.

On appeal, Diaz Guillen first argues that the district court impermissibly discounted his affidavit which, he says, created a genuine issue of material fact regarding the appropriateness of the course of treatment administered by Dr. Baker and Mills. Specifically, he swore that Dr. Baker refused to refer him to an outside specialist and that Dr. Baker and Mills persisted in prescribing ineffective antibiotics to treat his sinus infection.

Diaz Guillen, however, cannot point to facts in the record from which a reasonable factfinder could infer that Dr. Baker or Mills acted with deliberate indifference by recklessly ignoring a substantial risk to his health. See *Farmer v. Brennan*, 511 U.S. 825 (1994); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). As the district court correctly noted, Dr. Baker responded to Diaz Guillen's complaints by prescribing medicine to treat his issues and by adjusting Diaz Guillen's medication as his needs changed. Dr. Baker also suspected that Diaz Guillen was not improving because Diaz Guillen was not taking his medicine, so Dr. Baker ordered a nurse to watch Diaz Guillen take it. And when the prison's dentist opined that Diaz Guillen needed to see a specialist, Dr. Baker promptly approved an appointment with an ENT specialist. Dr. Baker also worked with the prison's doctors and the outside specialists to ensure that Diaz Guillen received numerous scans, a biopsy, surgery, and chemotherapy. We cannot say, given the evidence in the record, that this approach was "blatantly inappropriate," lacking professional judgment, or a reckless disregard of his needs. See *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). As for Mills, the record reflects that she prescribed different antibiotics and changed Diaz Guillen's medications based on his complaints. See *Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014) (physician not deliberately indifferent for failing to refer inmate to specialist because physician responded to inmate's complaints of back pain and ineffective medications "by prescribing new medications or changing the dosages").

Second, Diaz Guillen challenges the district court's finding that Dr. Baker and Mills did not delay his treatment. He asserts that it took him an unreasonable amount of time—more than a year from when he first complained of sinus problems—to have surgery.

The record, however, does not support any inference that Dr. Baker and Mills intentionally delayed treating Diaz Guillen or that their care substantially departed from standard medical practice. See *Cesal v. Moats*, 851 F.3d 714, 722–24 (7th Cir. 2017); *Gayton v. McCoy*, 593 F.3d 610, 622–23 (7th Cir. 2010). Dr. Baker and Mills responded to Diaz Guillen's initial complaints by prescribing antibiotics, altering his prescriptions, and ensuring that Diaz Guillen took his medicine. Dr. Baker also ordered x-rays of Diaz Guillen's sinuses, and the decision whether to order x-rays falls squarely within accepted medical judgment. See *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). When Diaz Guillen's condition worsened, Dr. Baker collaborated with the other doctors at the prison to develop a treatment plan, which included a referral to outside specialists. Dr. Baker ensured that Diaz Guillen attended his appointments, underwent the necessary surgical procedure, and received subsequent radiation treatments. Diaz

No. 17-2936 Page 5

Guillen's mere disagreement with the care provided by Dr. Baker and Mills is not enough to survive summary judgment. See *Cesal*, 81 F.3d at 724; *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017).

AFFIRMED

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**BILL OF COSTS**

May 17, 2019

Taxed in Favor of: **Appellee Thomas Baker ; Appellee Rhonda Mills**

| No. 17-2936 | LUIS M. DIAZ GUILLEN,<br>Plaintiff - Appellant<br><br>v.<br><br>THOMAS BAKER, MD, et al.,<br> Defendants - Appellees |
|---|---|
| **Originating Case Information:** ||
| District Court No: 3:15-cv-03087-CSB<br>Central District of Illinois<br>District Judge Colin S. Bruce ||

The mandate or agency closing letter issued in this cause on May 17, 2019.

BILL OF COSTS issued in the amount of: $117.30.

|   |   | Cost of Each Item | Total Cost Each Item |
|---|---|---|---|
| 1. | For docketing a case on appeal or review or docketing any other proceeding: _____ | _____ | _____ |
| 2. | For reproduction of any record or paper, per page: _____ | _____ | _____ |
| 3. | For reproduction of briefs: | _____ | 117.30 |

    _____

4.   _____     _____   _____

    _____

5.   _____     _____   _____

    _____

                                                TOTAL:     117.30

form name: **c7_BillOfCosts**(form ID: **140**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**CERTIFIED COPY**
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

## FINAL JUDGMENT

April 23, 2019

Before:   DIANE P. WOOD, Chief Circuit Judge
          WILLIAM J. BAUER, Circuit Judge
          DIANE S. SYKES, Circuit Judge

| No. 17-2936 | LUIS M. DIAZ GUILLEN,<br>Plaintiff - Appellant<br><br>v.<br><br>THOMAS A. BAKER and RHONDA MILLS,<br>Defendants - Appellees |
|---|---|
| **Originating Case Information:** ||
| District Court No: 3:15-cv-03087-CSB<br>Central District of Illinois<br>District Judge Colin S. Bruce ||

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)